IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs April 8, 2020

**TIMOTHY ALDRIDGE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 13-02223          Chris Craft, Judge**

———————————————————————

**No. W2019-01294-CCA-R3-PC**

———————————————————————

The Petitioner, Timothy Aldridge, entered a guilty plea to second-degree murder and received a sentence of forty years' imprisonment. He now appeals from the denial of post-conviction relief, arguing that trial counsel was ineffective in misleading him to believe that, by pleading guilty, he would be incarcerated at the Lois M. DeBerry Special Needs Facility ("DeBerry"). He also argues that his guilty plea was not knowingly and voluntarily entered based on trial counsel's assurance of the same. Upon our review, we affirm the judgment of the post-conviction court.[1]

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Josie S. Holland, Memphis, Tennessee, for the Petitioner, Timothy Aldridge.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson, Assistant Attorney General; Amy Weirich, District Attorney General; and Christopher J. Lareau, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The Petitioner, a backseat passenger in a taxicab driven by Kevin Grills, the victim, shot and killed the victim while he was driving. After the taxicab crashed, the Petitioner rummaged through the victim's pants pockets. On August 14, 2012, the Petitioner was indicted for first-degree premeditated murder of the victim. Sometime later, the Petitioner

---

[1] We are compelled to note the Petitioner failed to include the transcript from the post-conviction hearing and risked dismissal of the appeal for failing to provide an adequate record for review. However, this court permitted supplementation of the record with the transcript and, on July 29, 2020, the State filed its supplemental brief addressing the substantive issues for review.

filed a motion to be declared incompetent to stand trial, which was denied by the trial court. The Petitioner filed an interlocutory appeal of the denial of his competency motion, which was denied by this court. State v. Timothy Aldridge, No. W2016-00804-CCA-R9-CD (Tenn. Crim. App., Jackson, May 20, 2016) (order denying interlocutory appeal). On January 26, 2018, pursuant to a negotiated plea agreement, the Petitioner entered a guilty plea to second-degree murder, and the State recommended a sentence of 40 years' imprisonment and dismissal of an additional count in the indictment. At the beginning of the plea colloquy, defense counsel stated, "we have interlineated on the judgment recommendation that [the Petitioner] be housed [at] DeBerry, and we are asking Your Honor to interlineate the same." The trial court responded, "That would be fine." The trial court then engaged the Petitioner in a series of questions concerning his education, his familiarity with the paperwork surrounding the guilty plea, and affirmed the Petitioner's understanding of the guilty plea process based on his signature on various documents. The trial court explained the Petitioner's rights attendant to a jury trial and ensured that the Petitioner understood that he was waiving those rights by entry of the guilty plea. The trial court also explained the charges, the lesser-included offenses, and the potential penalty for each charge had the Petitioner been convicted at trial.

The trial court further advised the Petitioner that he was entering his guilty plea pursuant to State v. Hicks, 945 S.W.2d 706 (Tenn. 1997), which meant that the Petitioner was pleading guilty to a sentence outside his statutory range. The trial court noted that the Petitioner's Hicks guilty plea "waiv[ed] [the Petitioner's] statutory right to be sentenced in your normal range of 15 to 25 years [and was] in order to get the advantage of not having to be exposed to getting life without the possibility of release." The Petitioner acknowledged that he understood. Throughout the entire process the only question raised by the Petitioner concerned whether he was entitled to jail credit and how it would be applied to his sentence. At the conclusion of the colloquy, the trial court determined that the Petitioner was entering a knowing and voluntary guilty plea and accepted the State's recommended forty-year sentence of imprisonment.

The record contains a pro se post-conviction petition arguing, inter alia, ineffective assistance of counsel and involuntariness of his plea; however, it does not contain a filing date. On November 27, 2018, the post-conviction court appointed counsel and an amended petition was filed on February 4, 2019. The amended petition for post-conviction relief incorporated the original pro se petition and additionally alleged that the Petitioner was not adequately informed when he entered into an agreed sentence, the trial court nor his counsel adequately explained his constitutional rights, and trial counsel failed to adequately negotiate his sentence. On February 13, 2019, the State filed its response denying the allegations in the petition and demanding strict proof in support thereof.

At the April 26, 2019 post-conviction hearing, trial counsel, an attorney with the Public Defender's Office for over twenty years, testified that he represented the Petitioner as part of his role on the Capital Defense Team (CDT). Trial counsel said the CDT worked "to develop strategies for their clients, gathering records, identifying mental health and other co[-]occurring condition issues, everything you do on a normal case, but just more complicated." Several individuals "touched" the Petitioner's case, which involved mental health issues and other intellectual disabilities. Trial counsel met with the Petitioner "over 100" times, and he believed the evidence against the Petitioner was strong. Trial counsel considered the agreement to plead guilty to second-degree murder and a sentence of forty years' imprisonment was "the best we could do" for the Petitioner. Trial counsel discussed the plea agreement with the Petitioner "extensively," and specifically recalled detailing

> [T]he time, how it would be calculated, [the Petitioner's] jail credit, the recommendation to go to Lois M. DeBerry, the possibility of losing at trial, the very real possibility [the Petitioner] could get life without parole at trial.

Trial counsel described DeBerry as a Tennessee Department of Correction (TDOC) prison; however, it was a facility that had the capacity to administer psychotropic medication and a doctor on staff that specialized in mental illness. Trial counsel recommended that the Petitioner be sentenced to DeBerry, wrote the recommendation on the judgment form, and sent a letter to the Director of Classification for TDOC describing the Petitioner's circumstances and urging that he be placed at DeBerry. The letter was admitted as an exhibit to the hearing.

The Petitioner testified that he was dissatisfied with "the conditions of [his] location where [he was] serving [his] sentence[.]" He was currently incarcerated at the Whiteville State Penitentiary and previously incarcerated at Bledsoe. The Petitioner said that trial counsel told him he would be incarcerated at DeBerry, and he denied that trial counsel only recommended it. The Petitioner's understanding was that serving his sentence at DeBerry was part of his plea agreement, and he testified that this was the only way he would "sign for the time."

Quadrilya Barnes, the Petitioner's niece, testified that she was familiar with the case and had been present on the day the Petitioner entered his guilty plea. Prior to the guilty plea, she and several other family members discussed the case in trial counsel's office. She said her family recommended to the Petitioner that he enter the guilty plea for two reasons. She said if he did not accept the guilty plea, he could have received a life sentence. She also said that "*they* also kind of gave us a[n] idea that if he went to DeBerry that we would . . . be able to actually have family time with him there[.]"

The State recalled trial counsel in rebuttal, and he testified that he did not provide the Petitioner with a guarantee that he would be housed at DeBerry, and he also never led the Petitioner to believe that he or the court had the authority to do so. Trial counsel emphasized that he told the Petitioner that he would make a recommendation for the Petitioner to be housed at DeBerry but that the TDOC did not have to follow it. On cross-examination, trial counsel affirmed that there was no discussion of the court's authority to order the Petitioner to be housed at DeBerry during the plea colloquy.

On June 28, 2019, the post-conviction court entered an order denying relief. The post-conviction court's order provided some history and context for the Petitioner's case and set out, in pertinent part, as follows:

> The Petitioner was indicted for First Degree Murder in the killing of cab driver Kevin Grills. When the [P]etitioner was arrested, the State was considering asking for the death penalty because of the [P]etitioner's prior record of convictions, and for that reason he had been assigned two very experienced attorneys from the Shelby County Public Defender Capital Case Unit to represent him while still in General Sessions Court.
>
> This Court presided over a Motion to Suppress hearing on a video recording of the homicide in this case, and this court watched a video taken inside the taxicab from the camera mounted under the rear-view mirror of the cab, depicting the [P]etitioner sitting in the back seat of the cab while it was driving down the highway and suddenly, without any provocation, firing several shots. The cab driver was shot through the back of his seat several times into his back, causing his death as he was driving the cab. When the cab wrecked, the recording of the last few seconds of the video were automatically digitally stored. No one other than the [P]etitioner and the cab driver were present in the cab during the shooting. The affidavit of complaint sworn to when the [P]etitioner was booked into the jail . . . . asserts that the [P]etitioner exited the cab after the crash and then went through the victim's pockets and later admitted to a Yolanda Robinson that he had "killed the cab driver."
>
> . . . .
>
> Because of the [P]etitioner's low IQ, of which this court was thoroughly aware, having presided over the competency hearing and having reviewed all of the transcripts of the expert testimony and psychological reports, this court took great pains to explain the terms of the plea with the [P]etitioner. The subject of where the [P]etitioner might be housed was never mentioned, as this court had agreed to recommend the [P]etitioner to DeBerry, and was

- 4 -

never made aware that the location of the service of the [P]etitioner's sentence was a material part of the plea. If this court had become aware of this fact, this court would have rejected the plea agreement and begun the trial the following Monday, as this court has no jurisdiction to guarantee that condition.

. . . .

This court would never knowingly make it a part of any guilty plea that any defendant would be housed at a particular TDOC institution, as the decision as to where prisoners are to be housed is a function left to the Executive Branch of government. This court has no jurisdiction to order the Department of Correction to house any inmate in any specific location, other than to transport an inmate who is needed at a judicial hearing or trial in a case pending before this court to or from the court for that hearing or trial. This court finds the testimony of the trial attorney credible, and that of the [P]etitioner not at all credible. This court finds that although the [P]etitioner had a low IQ, he was very familiar with incarceration, having nine prior felony convictions at the time of the homicide, including several felony thefts, an attempted burglary and having finished serving a ten-year sentence in the Department of Correction prior to his arrest for this homicide. In testifying that he thought the terms of the plea included a guarantee that his 40[-]year sentence would be served at Lois DeBerry, rather than a mere recommendation, this court finds that the [P]etitioner was being untruthful.

After applying the relevant law, the post-conviction court determined that the Petitioner had failed to show "by credible testimony that the location of the service of his sentence was, in his mind, a material part of the plea agreement, and that without that guarantee, but only the court's recommendation, he would have insisted on going to trial." The court additionally concluded that the Petitioner entered a knowing and voluntary guilty plea, despite his reduced IQ from his history of brain trauma. On June 17, 2019, the Petitioner filed a notice of appeal, and his case is now properly before this court for review.

## ANALYSIS

As we understand the Petitioner's claim on appeal, he argues that trial counsel was ineffective in misleading him to believe he would be housed at Lois M. DeBerry Special Needs Facility upon entry of the guilty plea. The Petitioner further contends that but for trial counsel's assurance of placement at DeBerry, he would not have entered a guilty plea and would have proceeded to trial. In response, the State contends, and we agree, that denial of post-conviction relief was proper.

- 5 -

We begin our review of these issues by acknowledging that post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases. Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted). In order to prevail on an ineffective assistance of counsel claim, a petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard

- 6 -

of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context of a guilty plea, the petitioner must show that, but for counsel's errors, he would not have entered his guilty plea and would have proceeded to trial. Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

The validity of a guilty plea is a mixed question of law and fact that is reviewed de novo. Lane, 316 S.W at 562. To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. Id. (citing State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977) superseded on other grounds by rules as stated in State v. Wilson, 31 S.W.3d 189, 193 (Tenn. 2000); North Carolina v. Alford, 400 U.S. 25, 31 (1970); Brady v. United States, 397 U.S. 742, 747 (1970); Boykin v. Alabama, 395 U.S. 238, 242-44 (1969)). "[T]he record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea[.]" Mackey, 553 S.W.2d at 340; See Tenn. R. Crim. P. 11(b)(1). When determining whether a guilty plea was knowingly, voluntarily, and intelligently entered, the court must consider "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Lane, 316 S.W.3d at 562 (quoting Grindstaff, 297 S.W.3d at 218). If a guilty plea is not knowingly, voluntarily, and intelligently entered, then the defendant has been denied due process, and the guilty plea is void. Id. (citations omitted).

A plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43). In determining whether a guilty plea is voluntarily and intelligently entered, a trial court must look at a number of factors, which include the following:

> 1) the defendant's relative intelligence; 2) the defendant's familiarity with criminal proceedings; 3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; 4) the advice of counsel and the court about the charges and the penalty to be imposed; and 5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

Howell v. State, 185 S.W.3d 319, 330-31 (Tenn. 2006) (citing Blankenship, 858 S.W.2d at 904).

Applying the above law to the instant case, we conclude that the Petitioner is not entitled to relief. The Petitioner contends that trial counsel provided ineffective assistance based on his assurance that the Petitioner would be incarcerated at DeBerry as part of his plea agreement. The record shows that during the guilty plea colloquy, trial counsel advised the court that he would be recommending the Petitioner for placement at DeBerry, and the trial court also noted the recommendation on the judgment form. Trial counsel testified at the post-conviction hearing that he neither misled the Petitioner into believing nor guaranteed to the Petitioner that he would serve his sentence at DeBerry. A letter to the Director of Classification for TDOC from trial counsel concerning the Petitioner's circumstances and requesting that the Petitioner be considered for placement corroborates trial counsel's testimony. In denying relief, the post-conviction court accredited the testimony of trial counsel and found that trial counsel had only recommended the Petitioner to be placed at DeBerry. The record does not preponderate against the determination of the post-conviction court. Accordingly, we conclude that the Petitioner has failed to establish deficient performance or prejudice. He is not entitled to relief.

The Petitioner similarly contends that his guilty plea was not entered knowingly and voluntarily. He essentially argues that but for trial counsel's assurance of placement at DeBerry, he would have insisted on proceeding to trial. The record of the guilty plea colloquy shows that the trial court engaged the Petitioner in an extensive series of questions to ensure that he understood the rights he was waiving by entering the guilty plea. The only question raised by the Petitioner concerned allocation of his jail credit. After the trial court explained how the Petitioner's credit would be determined and by whom, the Petitioner affirmed that he had no further questions about the plea agreement or his sentence. Once again, the post-conviction court determined that the Petitioner was being untruthful in his assertion that the location where he was to serve his sentence was a material part of his guilty plea. Nothing in the record preponderates against the determination of the post-conviction court, and the Petitioner is not entitled to relief.

## CONCLUSION

Based on the above reasoning and authority, the judgment of the post-conviction court is affirmed.

_____
CAMILLE R. MCMULLEN, JUDGE

- 8 -